**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

KEVIN LEE ROSS

v. No. 24-cv-277-SDE

CHIEF JUDGE LANCE E. WALKER, ET AL.[1]

**REPORT AND RECOMMENDATION**

Self-represented Plaintiff Kevin Lee Ross filed a Complaint (Doc. No. 1[2]) in this court while he was incarcerated at the Somerset County Jail in East Madison, Maine.[3] In his Complaint, Mr. Ross asserts that Defendants violated his rights under the United States Constitution, federal law, and are liable to him under Maine state tort law. The Complaint is before the undersigned magistrate judge for preliminary review, pursuant to 28 U.S.C. § 1915A(a). For the reasons explained below, the court recommends that the district judge dismiss the Complaint in its entirety.

---

[1] In his Complaint, Plaintiff Kevin Lee Ross identifies the following individuals as defendants to this action: United States District Judges Lance E. Walker, Nancy Torresen, and John A. Woodcock Jr.; United States Magistrate Judges Karin Frink Wolf and John C. Nivison; Assistant United States Attorney Andrew McCormack; United States Probation Officers Bryce Torrenson and Ashley Hadam; and the United States District Court for the District of Maine Clerk's Office and its clerks.

[2] Mr. Ross made three additional filings in this case, which are docketed as Document Nos. 15-17 which, in part, appear to assert claims for relief. The same three filings were made in a number of cases Mr. Ross filed in this court. See, e.g., Ross v. Woodcock, No. 24-cv-013-LBM (D. Me.) (ECF Nos. 59-61). To the extent claims were asserted in those filings, they were dismissed in the other cases in which they were filed. Accordingly, to the extent Mr. Ross asserts claims in Document Nos. 15-17, the district judge should dismiss those claims as duplicative of claims which the court previously dismissed in other cases filed by Mr. Ross.

[3] Mr. Ross is now incarcerated at the Allenwood Low Federal Correctional Institution in White Deer, Pennsylvania.

## PRELIMINARY REVIEW STANDARD

In conducting preliminary review under 28 U.S.C. § 1915A(a), the court takes as true the facts asserted in the Complaint, and inferences reasonably drawn from those facts, strips away the legal conclusions, and considers whether the complaint states a claim that is plausible on its face. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In determining whether a pro se complaint states a claim, the court construes it liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). The court may dismiss claims if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim upon which relief might be granted, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b). Applying this standard, the court relates the facts relevant to the claims in this action as set forth in the Complaint.

## BACKGROUND[4]

In 2013, in this court, the United States charged Mr. Ross with one count of possessing child pornography. See United States v. Ross, Crim. Case No. 1:13-cr-158-LEW (D. Me.) ("2013 Criminal Case") (ECF No. 1). Assistant United States Attorney ("AUSA") Andrew McCormack prosecuted the 2013 Criminal Case on behalf of the United States. On October 21, 2014, a jury found Mr. Ross guilty of that offense. See id. (ECF No. 78). On April 2, 2015, the trial court sentenced Mr. Ross to serve ninety months in federal prison, followed by five years of supervised release. See id. (ECF No. 95). The First Circuit Court of Appeals affirmed his conviction. See United States v. Ross, 837 F.3d 85, 91 (1st Cir. 2016). The Supreme Court

[4] The facts here are taken from the Complaint filed in this case and the public dockets of cases referenced in Mr. Ross's filings and in this Order.

denied Mr. Ross's petition for a writ of certiorari. See Ross v. United States, 137 S. Ct. 485, 486 (2016) (Mem.).

Mr. Ross was released from incarceration and commenced his term of supervised release on or about April 8, 2021. See 2013 Crim. Case (ECF No. 121, at 1). While Mr. Ross was on supervised release, he was living in his late mother's home with his brother, Scott Lee Ross ("Scott"). During that time, Scott called Mr. Ross's probation officer and reported that Mr. Ross was in possession of an unauthorized cell phone. Mr. Ross alleges that Scott's report to probation was false. Mr. Ross contends that Scott made the reports in an effort to have Mr. Ross removed from the house and incarcerated, so that Scott and Mr. Ross's other brother, Michael Lee Ross ("Michael") could split their mother's estate (which consisted of, at least, a car, a truck, personal property, a house, and a $420,000 life insurance policy) two ways, rather than having to share the estate with the plaintiff.

In response to Scott's calls, United States Probation Officers ("USPOs") Bryce Torrenson and Ashley Hadam searched Mr. Ross's home. They discovered a laptop and cell phone containing child pornography. Scott told the officers those items belonged to Mr. Ross. As a result, Mr. Ross's supervised release was revoked on October 3, 2024, and the court imposed a twenty-four month prison sentence for the supervised release violations relating to evidence uncovered during the search of Mr. Ross's home. See id. (ECF No. 162).

Mr. Ross was also charged criminally with possessing child pornography arising out of the same conduct underlying his supervised release revocation. See United States v. Ross, Crim. Case No. 1:23-cr-073-LEW (D. Me.) ("2023 Criminal Case"). Mr. Ross asserts that despite his innocence and the government's failure to present sufficient evidence to prove his guilt, he was convicted of that offense after a jury trial. The court sentenced him to 121 months in prison, to be

served consecutively to the twenty-four month sentence imposed for violating the conditions of his supervised release in the 2013 Criminal Case. The First Circuit Court of Appeals affirmed Mr. Ross's conviction. See United States v. Ross, 171 F.4th 522, 534 (1st Cir. 2026). Mr. Ross is presently serving the sentence imposed in the 2023 Criminal Case.

**CLAIMS**

Liberally construing the Complaint, the court finds that Mr. Ross, seeking damages, release from incarceration, and an order vacating the sentence imposed in the 2023 Criminal Case, asserts the following claims for relief in this action:

1. The Federal Defendants denied Mr. Ross due process and a fair trial in his 2023 Criminal Case, in violation of his Fifth Amendment rights, in that:

   a. the prosecution withheld exculpatory evidence from Mr. Ross;

   b. the prosecution knowingly presented perjured, falsified, and/or planted testimony at Mr. Ross's criminal trial, and intentionally omitted exculpatory evidence, with the intent to prejudice the jury against Mr. Ross;

   c. the prosecutor was biased against him and had a conflict of interest;

   d. the judge who presided over Mr. Ross's criminal case was biased against him, had a conflict of interest, improperly failed to recuse himself, and engaged in judicial overreach, abuse of process, and abuse of power;

   e. the government failed to present sufficient evidence at his criminal trial to prove his guilt beyond a reasonable doubt.

2. The Defendants committed criminal acts in connection with Mr. Ross's 2023 Criminal Case, including committing and suborning perjury, acting both individually and in conspiracy with one another;

3. The Federal Defendants subjected Mr. Ross to an unreasonable warrantless search of his home in violation of his Fourth Amendment rights.

4. USPO Torrenson acted as a "stalking horse," by searching Mr. Ross's home to help the police search for evidence of new crimes with which to charge Mr. Ross.

5. The Federal Defendants subjected Mr. Ross to false arrest and imprisonment, in violation of his Fourth and Fifth Amendment rights.

6. The Federal Defendants prosecuted Mr. Ross criminally based on the conduct underlying his past criminal conviction and/or his supervised release violation, in violation of his Fifth Amendment right not to be subject to double jeopardy.

7. In retaliation for filing civil lawsuits against federal judges, prosecutors, and probation officers, and in violation of Mr. Ross's First Amendment right to petition the government for a redress of grievances, and his Fifth Amendment right to equal protection of the laws:

a. the Defendant Federal judges improperly dismissed civil cases Mr. Ross filed in this court;

b. the Federal Defendants prosecuted the 2023 Criminal Case; and

c. the Federal Defendants treated Mr. Ross differently than any other individual.

8. The Federal Defendants conspired to engage in the violations of Mr. Ross's constitutional rights underlying the claims set forth above as Claims 1-7.

9. The Defendants deprived Mr. Ross of his dignity by allowing him to be incarcerated, prosecuted, convicted, and sentenced for offenses Defendants know Mr. Ross did not commit; and are liable to Mr. Ross in tort for negligence and intentional infliction of emotional distress in that they engaged in the conduct underlying the claims identified above as Claims 1-8.

## DISCUSSION

### I. Immunity

#### A. United States District Judges and Magistrate Judges

Mr. Ross asserts claims for damages against United States District Judges Lance E. Walker, Nancy Torresen, and John A. Woodcock Jr., and United States Magistrate Judges Karin Frink Wolf and John C. Nivison. "[I]t is an axiom of black letter law that when a judge carries out traditional adjudicatory functions, he or she has absolute immunity for those actions." Zenon v. Guzman, 924 F.3d 611, 616 (1st Cir. 2019); see also Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (judicial immunity is overcome only for "actions not taken in the judge's judicial capacity" and "for actions, though judicial in nature, taken in the complete absence of all jurisdiction") (per curiam).

"[A]bsolute judicial immunity means not just immunity from damages, but immunity from suit altogether." Zenon, 924 F.3d at 617 n.10 (citation omitted). Absolute judicial immunity precludes lawsuits for damages against federal judges for actions within "their judicial functions." Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 108 (1st Cir. 2015); see also Verogna v. Johnstone, 583 F. Supp. 3d 331, 337 (D.N.H. 2022), aff'd, No. 22-1364, 2022 U.S. App. LEXIS 37681, at *1, 2022 WL 19795808, at *1 (1st Cir. Nov. 14, 2022). Judicial immunity also precludes lawsuits against federal judges where the plaintiff seeks injunctive relief. See Verogna, 583 F. Supp. 3d at 337 (citing Bolin v. Story, 225 F.3d 1234, 1240 (11th Cir. 2000)).

To determine whether a judge is entitled to the protection of the judicial immunity doctrine, the Court determines "whether the judge's act was one normally performed by a judge, and whether the parties were dealing with the judge in his or her judicial capacity." Zenon, 924 F.3d at 617 (citing Stump v. Sparkman, 435 U.S. 349, 362 (1978)). All of the claims Mr. Ross asserts here against judges involve the judges' performance of adjudicatory functions, such as presiding over and deciding civil cases, and presiding over Mr. Ross's criminal trial and sentencing. Accordingly, the Defendant judges are protected from suit by absolute judicial immunity. The district judge, therefore, should dismiss Claims 1-3 and 5-10, to the extent Mr. Ross asserts those claims against one or more of the judges named as Defendants in this action.

B. Assistant United States Attorney Andrew McCormack

A government prosecutor performing functions "'intimately associated with the judicial phase of the criminal process,'" enjoys absolute immunity from lawsuits. Penate v. Kaczmarek, 928 F.3d 128, 135 (1st Cir. 2019) (quoting Forrester v. White, 484 U.S. 219, 226 (1988)); see also Imbler v. Pachtman, 424 U.S. 409, 431 (1976)). Federal prosecutors are thus absolutely immune from suit for conduct undertaken in the exercise of their "core prosecutorial function of 'initiating

a prosecution and . . . presenting the State's case.'" Penate, 928 F.3d at 135 (quoting Imbler, 424 U.S. at 431); see also Chan v. Cirilli, Civil Action No. 1:21-cv-11135-IT, 2022 U.S. Dist. LEXIS 211287, at *5-*7, 2022 WL 17156089, at *3 (D. Mass. Nov. 22, 2022) (doctrine of prosecutorial immunity applies to suit against federal prosecutors) (citations omitted).

Here, Mr. Ross's allegations against AUSA McCormack describe acts taken in his official function as a prosecutor — specifically, bringing, pursuing, and litigating a criminal case against Mr. Ross. Accordingly, AUSA McCormack is shielded from the claims asserted against him in this action by absolute immunity, and the district judge in this case should dismiss Claims 1-3 and 5-10, to the extent Mr. Ross asserts those claims against AUSA McCormack.

C. USPOs Torrenson and Hadam

"Judicial immunity," discussed above, "extends to other officers of government, whose duties are related to the judicial process." Barr v. Matteo, 360 U.S. 564, 569 (1958). Probation officers in the federal courts, while "engag[ing] in a role closely associated with the discretionary function of the decision-maker" -- here, a judge -- are immune from suit for actions taken in that role. Namey v. Reilly, 926 F. Supp. 5, 8-10 (D. Mass. 1996). "As an 'investigative and supervisory arm of the court,'" a USPO "'is entitled to absolute immunity from suit in the performance of . . . her judicially-related functions.'" Marston v. Cook, Civ. No. 10-cv-278-WES, 2010 U.S. Dist. LEXIS 129925, at *8, 2010 WL 5092743, at *3 (D.N.H. Aug. 31, 2010) (quoting United States v. Davis, 151 F.3d 1304, 1306 (10th Cir.1998)), R&R adopted sub nom. Marston v. United States, No. 10-cv-278-WES, 2010 U.S. Dist. LEXIS 130525, at *1, 2010 WL 5090512, at *1 (D.N.H. Dec. 6, 2010); see also Benson v. Safford, 13 F. App'x 405, 407 (7th Cir. 2001) ("probation officers are absolutely immune from suits challenging conduct intimately associated with the criminal justice process); Tripati v. U.S. Immigr. & Naturalization Serv., 784 F.2d 345, 348 (10th Cir. 1986)

(holding that when "the challenged activities of a federal probation officer are intimately associated with the judicial phase of the criminal process, he or she is absolutely immune from a civil suit for damages"). Additionally, where probation officers act in a prosecutorial role in court, they are protected by absolute prosecutorial immunity. See Penate, 928 F.3d at 135 (noting that the Supreme Court has taken a "functional approach" to absolute immunity from suit, which "looks to the nature of the function performed, not the identity of the actor who performed it." (quoting Forrester, 484 U.S. at 229)).

To the extent Mr. Ross's claims against either of the Defendant USPOs are based on their actions in investigating an alleged violation of supervised release, presenting information and evidence in Mr. Ross's supervised release violation proceedings, recommending a sentence for those violations, maintaining records of Mr. Ross as directed by the court, or "any other duty that the court may [have] designate[d]," the Defendant USPOs are absolutely immune from suit. For these reasons, the district judge should dismiss Claims 1-10, to the extent Mr. Ross asserts those claims against USPOs Torrenson and Hadam.

D. Court Clerk Immunity

Mr. Ross claims that unidentified members of the Clerk's office of this court violated his rights by failing to docket unspecified filings in his cases and misdocketing other filings with a motive to interfere with his rights and his lawsuits. Similar to judicial immunity, "[t]he doctrine of quasi-judicial immunity provides absolute immunity for those who perform tasks that are inextricably intertwined with the judicial function." Nystedt v. Nigro, 700 F.3d 25, 30 (1st Cir. 2012). "'Court clerks perform tasks that are inextricably intertwined with the adjudication of disputes.'" Hartunian v. Sweeney, Civ. No. 3:21-cv-30089-KAR, 2022 WL 3715870, at *8 (quoting Mangianfico v. Stanton, No. C.A. No. 19-10490-ADB, 2019 WL 1284819, at *3 (D.

Mass. Mar. 20, 2019)). "Thus, the First Circuit has extended absolute immunity to court clerks." Hartunian, 2022 WL 3715870, at *8 (citing Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980)).

Mr. Ross sues the court clerks for actions they took while receiving, handling, and docketing his legal paperwork. The court finds that such activities are inextricably intertwined with the judicial function. Accordingly, the court finds that the Defendant clerks are immune from suit, and the district judge, therefore, should dismiss the claims identified above as Claims 7-9, to the extent those claims are asserted against those defendants.

## II. Challenges to Criminal Case

### A. Damages Claims

In the claims identified in this Report and Recommendation as Claims 1-9, Mr. Ross challenges the proceedings in the 2023 Criminal Case, and the 121-month sentence imposed in that case, as well as the supervised release violation proceedings which preceded his 2023 criminal prosecution. "Plaintiffs are generally barred from litigating claims for damages that would necessarily imply the invalidity of a judgment of conviction and a sentence unless the judgment and sentence have been previously invalidated." Violette v. Baker, No. 2:19-CV-479-PJB, 2020 U.S. Dist. LEXIS 235427, at *4, 2020 WL 7356608, at *2 (D. Me. Dec. 15, 2020) (citing Heck v. Humphrey, 512 U.S. 477, 487 (1994)), R&R approved, 2021 U.S. Dist. LEXIS 43221, at *1 (D. Me. Mar. 8, 2021); see also Swan v. Barbadoro, 520 F.3d 24, 26 (1st Cir. 2008) (finding that the "Heck rule" applies to challenges to federal convictions asserted against federal officials); Hutchins v. Me. State Hous., No. 1:14-cv-00491-JAW, 2015 U.S. Dist. LEXIS 50428, at *13, 2015 WL 2250672, at *4 (D. Me. Apr. 16, 2015) ("Heck rule" applied to claims concerning validity of order revoking plaintiff's supervised release), R&R approved, 2015 U.S. Dist. LEXIS 62492, at

*1, 2015 WL 2250672, at *1 (D. Me. May 13, 2015). Accordingly, the district judge should dismiss the claims identified above as Claims 1-9, as Mr. Ross's success on those claims would undermine the validity of his supervised release violation proceedings, the proceedings in the 2023 Criminal Case, and/or the sentences imposed in those proceedings, as those proceedings have not been invalidated on appeal or otherwise.

B. Relief From Conviction and Sentence

In addition to damages, Mr. Ross seeks release from his present incarceration and an order vacating his 2023 child pornography conviction. To the extent Mr. Ross seeks release by challenging the validity of his criminal conviction, such claims "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas.'" Trump v. J. G. G., 145 S. Ct. 1003, 1005 (2025) (citations omitted). The district judge, therefore, should dismiss Mr. Ross's claims to the extent he seeks such relief, without prejudice to his ability to challenge his conviction and/or sentence on appeal, in a motion brought under 28 U.S.C. § 2255 or in a habeas action.

## III. Claims Alleging Defendants' Criminal Conduct

In the claims identified above as Claims 2 and 8, Plaintiff alleges that Defendants harmed him by engaging in criminal conduct individually, and conspiring to engage in criminal conduct with one another. In general, a plaintiff does not have standing to bring claims in a civil case arising out of criminal misconduct. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Accordingly, the district judge should dismiss Claims 2 and 8, to the extent those claims attempt to allege causes of action arising out of the Defendants' criminal behavior.

## IV. Insufficiently Stated Claims

In the claim identified above as Claim 8, Mr. Ross alleges that the Defendants engaged in a conspiracy to violate his constitutional rights. Mr. Ross has not stated any nonconclusory facts to support the existence of a conspiracy, and the district judge should dismiss Claim 8.

## V. State Law Tort Claims

In the claim identified above as Claim 9, Mr. Ross asserts that Defendants are liable to him under state tort law for the alleged conduct which upon which his federal claims are based. As discussed above, the undersigned magistrate judge finds that Mr. Ross has failed to state any federal claim upon which relief might be granted. Accordingly, the district judge should decline to exercise supplemental jurisdiction of Mr. Ross's claims arising under state tort law, without prejudice to his ability to litigate those claims in state court. See 28 U.S.C. § 1367.

## CONCLUSION

For the foregoing reasons, the district judge should dismiss this action in its entirety. The dismissal should be without prejudice to Mr. Ross's ability to reassert claims in a new civil action if his 2023 Criminal Case is invalidated in the future by a successful appeal or habeas corpus action, and without prejudice to his ability to seek relief from his criminal conviction on appeal, in a motion filed under 28 U.S.C. § 2255, or in a habeas petition.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The objection period may be extended upon motion. Only those issues raised in the written objections "'are subject to review in the district

court,'" and any issues "'not preserved by such objection are precluded on appeal.'" Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016) (citations omitted).

Andrea K. Johnstone
United States Magistrate Judge

August 17, 2026

cc: Kevin Lee Ross, pro se